IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELVERA LLANAS, on behalf of
R.I.P., a minor,

    Plaintiff,

v.                                                No. 1:16-cv-00830-KRS

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO REVERSE AND REMAND AND REMANDING TO AGENCY FOR FURTHER PROCEEDINGS

Plaintiff seeks review of the Commissioner's determination that her minor son, R.P., is not disabled under Section 1614(a)(3)(C) of the Social Security Act. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b), the Court has examined the administrative record as a whole and considered Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, filed December 21, 2016 [Doc. No. 18], the Commissioner's response in opposition, filed May 26, 2017 [Doc. No. 32], and Plaintiff's reply, filed June 16, 2017 [Doc. No. 33]. Having so considered, the Court FINDS and CONCLUDES that Plaintiff's Motion to Reverse and Remand for Payment of Benefits is not well-taken and should be denied. The Court further FINDS and CONCLUDES that Plaintiff's alternative Motion for Remand for Rehearing is well-taken and should be granted.

*Opinion and Order Granting in Part*
*Motion to Reverse and Remand*
Page **1** of **13**

# I. PROCEDURAL BACKGROUND

R.P. was born on April 15, 2000. In April of 2010, Plaintiff filed an application for supplemental security income (SSI) on R.P.'s behalf, alleging that her son had been disabled since October 20, 2006, due to attention deficit hyperactivity disorder (ADHD), a learning disability, and speech problems. [Doc. No.15-12, p. 6]. An administrative review of the application noted "severe impairments" in the form of ADHD and posttraumatic stress disorder (PTSD); however, on September 2, 2010, it was determined that R.P.'s impairments did not meet or equal a listing and the claim was denied. [Doc. No.15-7, p. 3]. This determination was affirmed on February 2, 2011 [Doc. No. 15-7, p.4], and a subsequent hearing before an administrative law judge (ALJ), held on February 15, 2012, again, ended in a denial [Doc. No. 15-7, pp.8-21].

Upon the request of Plaintiff, the Appeals Council reviewed the ALJ's decision and determined that further evaluation was necessary due to the submission of new and material evidence. [Doc. No. 15-7, p.27]. On October 24, 2013, the matter was remanded to the ALJ with instructions to obtain further evidence regarding R.P.'s hearing and mental impairments and to evaluate the severity of the same. [Doc. No. 15-7, pp. 28-29].

Pursuant to the mandate of the Appeals Council, a second hearing was held on December 18, 2014, during which ALJ Barry O'Melinn[1] heard testimony from both Petitioner and R.P. Following the hearing, the record remained open pending the submission of updated school

---

[1] Both parties state that ALJ Juge conducted the December 18, 2014 hearing. In fact, ALJ Juge makes this very assertion in his Decision. [Doc. No. 15-4, p. 5]. The transcript of the hearing, however, lists Barry O'Melinn as the presiding ALJ. [Doc. No. 15-6, pp. 2, 4, 32]. Further, the transcript claims that the hearing was conducted in Albuquerque, [Doc. No. 15-6, pp. 2, 4], while the Decision states that Plaintiff and R.P. appeared in Gallup and ALJ Juge presided over the hearing from Louisiana. [Doc. No. 15-4, p. 5].

*Opinion and Order Granting in Part*
*Motion to Reverse and Remand*
Page **2** of **13**

records and teacher questionnaires. These documents were received in January of 2015, and the unfavorable decision underlying the case at bar was issued on March 26, 2015.

## II.  STANDARD

Judicial review of the Commissioner's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence. 42 U.S.C. §405(g); *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (internal quotation marks omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* Even so, it is not the function of the Court to review Plaintiff's claims de novo, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III.  ANALYSIS

### A.  Disability Framework

A child is considered disabled within the meaning of the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

*Opinion and Order Granting in Part
Motion to Reverse and Remand*
Page **3** of **13**

When evaluating whether a child falls within this standard, an ALJ employs a sequential three-step process to determine whether (1) the child is engaged in substantial, gainful activity; (2) the child has an impairment or combination of impairments that is severe; and (3) the child's impairment, either alone or in combination with another impairment, meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, App. 20 C.F.R. § 416.924(a). If, in the third step, it is determined that the child has a severe impairment, or combination thereof, that does not meet or medically equal a listing, the ALJ must then determine whether the impairment(s) functionally equal a listing. 20 C.F.R. § 416.926a(a).

A child's impairment functionally equals a listing when it results in "marked limitations in two domains of functioning or an extreme limitation in one domain." *Id.* (internal quotation marks omitted). As set forth in 20 CFR 416.926a(e)(2)-(3), a limitation will be deemed "marked" if it seriously interferes with the child's ability to "independently initiate, sustain, or complete activities," while a limitation that "very seriously" interferes in such a manner is considered "extreme."

A functionality analysis requires the ALJ to consider how the child functions in terms of six (6) domains, to wit: "(i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for [his or her self]; and (vi) health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

### B. The ALJ's Determination

ALJ Juge engaged in the sequential analysis set forth above, first finding that R.P. had not engaged in substantial gainful activity since the application date of April, 5, 2010. At step two, ALJ Juge found that R.P. has severe impairments in the form of PTSD, ADHD, and dyslexia. A fourth and final impairment, hearing loss, was identified and categorized as "non-

*Opinion and Order Granting in Part*
*Motion to Reverse and Remand*
Page **4** of **13**

severe." At step three, ALJ Juge concluded that none of R.P.'s impairments—either alone or in combination—medically or functionally met or equaled the severity of a listed impairment.

## C. Challenges to the ALJ's Determination

Plaintiff offers four arguments in support of her request for reversal and remand, viz., that ALJ Juge (1) failed to conduct a proper functional analysis of R.P.'s impairments; (2) failed to consider the credibility of her testimony; (3) failed to consider the whole child; and (4) failed to compare R.P.'s functioning to that of non-disabled children. Finding that Plaintiff is challenging the propriety of the ALJ's credibility and functionality determinations, the Court categorizes her arguments as such and agrees, in part, with both.

### 1. Credibility Determination

In his report, ALJ Juge summarized the hearing testimony of both Plaintiff and R.P. and concluded that their statements concerning the "intensity, persistence, and limiting effects of" R.P.'s symptoms were not "entirely credible for the reasons explained below." [Doc. No.15-4, p. 11]. The Court can only surmise that those "reasons" take the form of allegedly conflicting medical and educational evidence as ALJ Juge fails to tether his credibility determination to anything concrete. Similarly vague is ALJ Juge's allotment of weight to the State agency childhood disability evaluations "to the extent consistent with the findings herein." [Doc. No.15-4, p. 15].

While "credibility determinations are peculiarly the province of the finder of fact," such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Raymond v. Astrue*, 621 F.3d 1269, 1273 (10th Cir. 2009) (internal quotation marks and citation omitted). Here, ALJ Juge's generic credibility assertions fall short of the substantial evidence standard. Accordingly, the ALJ's decision should be

*Opinion and Order Granting in Part*
*Motion to Reverse and Remand*
Page **5** of **13**

remanded for a proper credibility determination. *See Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014).

Further, the Court emphasizes that this reevaluation of credibility should also include a clarification of the staggering inconsistencies between ALJ Juge's report and the December 18, 2014 hearing transcript. *See* supra note 1. That the record contains two different accounts of the same hearing calls into question not only ALJ Juge's ability to weigh the credibility of the hearing testimony, but also the reliability of his report as a whole.

Additionally, the Court notes that neither of R.P.'s treating physicians, Drs. Mezoff and Hauser, nor his therapist, Mr. Wilcken, LPCC, were ever assigned a credibility rating. This, too, warrants remand.[2] *See Knight ex rel. P.K.*, 756 F.3d 1171, 1176 (10th Cir. 2014) (explaining that "[a] treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record…. When a treating physician's opinion is not given controlling weight, the ALJ must explain what weight, if any, was assigned to the opinion") (internal citation and quotation marks omitted); *see also* 20 C.F.R. § 404.1527(c)(2).

## 2. Functional Analysis

In regard to ALJ Juge's functionality assessment of R.P., Plaintiff appears to argue that the ALJ's findings were not supported by substantial evidence. At the time of his March 26, 2015 Decision, ALJ Juge had before him evidence in the form of hearing testimony; R.P.'s school records; questionnaires submitted by several of R.P.'s teachers; records and information

---

[2] ALJ Juge does discuss, without weighing, various medical records submitted by Drs. Mezoff and Hauser. While quite unclear, it appears that he found the Drs. statements regarding medication credible and discounted the remainder.

*Opinion and Order Granting in Part*
*Motion to Reverse and Remand*
Page **6** of **13**

submitted by R.P.'s treating physicians; and State agency childhood disability evaluations. [Doc. No.15-4, pp. 13-21].

R.P.'s school records reveal a behavioral history of aggression, inattention, and social deficiencies. Cannabis use and difficulties at home, especially in relation to R.P.'s relationship with his mother, are also mentioned. Academically, the records demonstrate that R.P. has one or more learning disabilities and that he requires special education services and accommodations. Even with accommodations, R.P. finished the first semester of the eighth grade with a D+ in math, a C+ in language arts, a D+ in science, and a D- in history. He did, however, receive an A- in industrial arts. [Doc. No.15-17, p. 6]. In the seventh grade, R.P. earned an F in Math 7 and Ds in Math 100, a D- in science, and a D and C- in language arts. [Doc. No.15-17, p. 8]. R.P.'s sixth grade transcript also shows Ds in math, a D in history, and a D+ in language arts. [Doc. No.15-17, p. 8].

Teacher questionnaires speak to both behavioral and academic concerns. R.P.'s industrial arts teacher, Phil King, for example, noted that R.P. has a "serious" problem reading and comprehending written material; carrying out multi-step instructions; using appropriate language; taking turns in a conversation; and handling frustration appropriately. [Doc. No. 15-17, pp. 12-19]. Mr. King added that R.P.'s behavior is more consistent "lately," and that R.P. can do "most things that are assigned to him." [Doc. No. 15-17, pp. 15, 17].

Meranda Lincoln, R.P.'s special education teacher, reported that R.P. has "serious" problems in seven out of the ten categories used to assess one's ability to acquire and use information, but that small group or individual instruction helps in this realm. [Doc. No.15-17, p. 21]. "Serious" problems were also noted in areas such as focusing; completing tasks; following multi-step instructions; expressing anger; respecting authority; using appropriate

*Opinion and Order Granting in Part*
*Motion to Reverse and Remand*
Page **7** of **13**

coping skills; and identifying and asserting emotional needs. [Doc. No. 15-17, pp. 20-27]. Ms. Lincoln further expressed that R.P. has "very serious" problems expressing anger and seeking attention appropriately; using appropriate language; maintaining appropriate topics of conversation; and using adequate vocabulary and grammar to express thoughts and ideas. In regard to R.P.'s medication regimen, Ms. Lincoln explained that R.P. is able to stay on task when he takes his Adderall and Vyvanse, and that the medication also helps with his frustration and anger. [Doc. No. 15-17, p. 26].

R.P.'s science teacher, Shafiq Chaudhary, reported that R.P. has "serious" problems in areas such as understanding and participating in class discussions; recalling and applying previously learned material; completing assignments; and using appropriate language. "Very serious" problems were identified in the categories of expressing anger appropriately; following rules; introducing appropriate topics of conversation; using adequate vocabulary and grammar to express ideas; focusing; and organizing. [Doc. No. 15-17, pp. 28-35].

In terms of medical evidence, an agency doctor evaluated R.P. in 2010 and determined that he had severe impairments in the form of ADHD and PTSD that did not meet or equal the listings. [Doc. No. 15-22, pp. 25-30]. A second agency evaluation, conducted in 2011, found that R.P. had ADHD, PTSD, an adjustment disorder, and learning disabilities. Again, R.P.'s impairments were deemed severe but not equal to the listings. [Doc. No. 15-23, pp. 15-20].

In a letter dated August 11, 2014, R.P.'s psychiatrist, Dr. Hauser, reported diagnoses of Schizoaffective Disorder, ADHD, and Learning Disorder, severe. [Doc. No. 15-27, p. 10]. Dr. Hauser went on to explain that R.P. has a "serious brain disorder" in the form of dyslexia and that the child's educational inadequacies are due to "weaknesses of his brain," not environmental factors. Reports submitted by Dr. Mezoff, R.P.'s primary care pediatrician, also show that R.P.

*Opinion and Order Granting in Part*
*Motion to Reverse and Remand*
Page **8** of **13**

was diagnosed with ADHD, a schizoaffective disorder, and learning disabilities. The schizoaffective disorder reportedly takes the form of auditory hallucinations and, on June 23, 2014, R.P. indicated that he still hears voices four or five times a day, but that they are "less intense than they were before." [Doc. No. 15-27, p. 13].

Records from R.P.'s individual therapy sessions with Wayne Wilcken, LPCC, dated April 17, 2013 to July 9, 2014, discuss issues including, inter alia, R.P.'s "self-mutilation" and "suicidal ideation," [Doc. No. 15-28, p. 14], and the need to "reduce risk of harm to self or others." [Doc. No. 15-28, pp. 2, 4, 6, 8, 10, 19, 21]. As with R.P.'s school records, his therapy records indicate cannabis use and difficulties with his mother and home life.

With this evidence at hand, ALJ Juge determined that the teacher questionnaires completed by Mr. King and Ms. Lincoln should be given "significant weight" because they were the "most detailed" and the educators had taught R.P. for the past two years. Mr. Chaudhary's questionnaire was given "less weight" because it did not address R.P.'s use of medication. Interestingly, there is no explanation as to how or why this omission affected the credibility of R.P.'s science teacher, and the Court notes that Ms. Lincoln was the only one of the three teachers to complete the medication section of the questionnaire. As previously detailed, the record is silent in terms of the weight assigned, if any, to R.P.'s treating physicians, including R.P.'s schizoaffective disorder as diagnosed by Dr. Hauser.

ALJ Juge ultimately reasoned that R.P. had less than marked limitations in acquiring and using information; attending and completing tasks; and interacting and relating with others, and no limitations in moving and manipulating objects; caring for himself; or health and physical well-being. In so doing, ALJ Juge found that many of R.P.'s issues stem from environmental

*Opinion and Order Granting in Part*
*Motion to Reverse and Remand*
Page **9** of **13**

factors and that the evidence of record "indicate[s] improvement with medication." [Doc. No. 15-4, p. 14].

After meticulously combing through the more than 800 pages in the record, the Court finds that the ALJ's conclusions as to R.P.'s functionality are not supported by substantial evidence. While the Court recognizes that an ALJ is not required to discuss every piece of evidence before him, the record must demonstrate that the ALJ at least considered all of the evidence in the record and, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

In the case at bar, ALJ Juge makes short shrift of his credibility determinations; rejects a majority of R.P.'s medical evidence without explanation; fails to even discuss whether R.P.'s schizoaffective disorder is an impairment and, if so, whether it is categorized as severe or non-severe; and appears to base his decision, without justification, upon cherry-picked, isolated comments which are overwhelmed by conflicting evidence. As a result, the Court is unable to conduct a meaningful review of the ALJ's decision. *See, e.g.*, *Clifton*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion"). Particularly problematic are the ALJ's unsupported conclusions in regard to the domains of acquiring and using information; interacting and relating with others; and caring for oneself.

As stated above, ALJ Juge found that R.P. has "less than marked" limitations in his ability to acquire and use information. In the brief discussion following this determination, ALJ Juge first references a May 15, 2012 education evaluation which found that R.P. has several impairments

*Opinion and Order Granting in Part*
*Motion to Reverse and Remand*
Page **10** of **13**

and requires special education services. He then adds that "[a]s of March 2013, the claimant's therapist noted the claimant was in the sixth grade… [and] was earnings [sic] all A's [sic]," and further explains that R.P. earned two Cs and passed reading in the second semester of the seventh grade and received three Ds, a C+ and an A- in the first semester of the eighth grade. The assessment concludes with references to Ms. Lincoln's comment that small group or individual instruction helps R.P., and Mr. King's statement that R.P. is able to do the majority of things assigned to him. [Doc. No. 15-4, p. 16].

ALJ Juge appears to have completed his assessment in a vacuum. First, the suggestion that R.P. was earning all As in the sixth grade is directly contradicted by R.P.'s middle school transcript which shows that he earned Ds in math, a D in history, and a D+ in language arts. [Doc. No.15-17, p. 8]. Second, while Ms. Lincoln did state that small group/individual instruction helps R.P. stay on task, she also advised that R.P. has "serious problems" comprehending oral instructions; understanding school content and vocabulary; understanding and participating in class discussions; providing organized oral explanations and adequate descriptions; expressing ideas in written form; learning new material; and recalling and applying previously learned material. [Doc. No. 15-17, p. 21]. Finally and most importantly, the ALJ completely failed to consider Dr. Hauser's opinion that R.P. has a "serious brain disorder" in the form of dyslexia and that R.P.'s educational inadequacies are due to "weaknesses of his brain," not environmental factors.

In regard to interacting and relating with others, ALJ Juge supports his finding of "less than marked limitation" with three pieces of evidence: (1) Ms. Lincoln's comment that medication helps R.P. with his anger and frustration; (2) Mr. King's statement that he has R.P. helping

Opinion and Order Granting in Part
Motion to Reverse and Remand
Page **11** of **13**

others in the classroom; and (3) Mr. King's assertion that he is usually able to stop R.P. from acting out through the use, or threatened use, of sanctions.

A review of the entire record, however, shows that Ms. Lincoln also reported that R.P. has "very serious" problems seeking attention appropriately; introducing appropriate topics; using appropriate language; and using adequate vocabulary and grammar to express thoughts and ideas. Mr. King, too, noted "obvious" to "serious" problems in R.P.'s ability to engage in verbal communication. More baffling, though, is the omission of R.P.'s behavioral history, including his Behavior Intervention Plan and Behavior Assessment [Doc. No. 15-16, pp. 2-24], or the anger issues and social conflicts that were addressed in R.P.'s individual therapy sessions with Mr. Wilcken, LPCC. [Doc. No. 15-28].

Finally, in determining that R.P. has no limitation in the ability to care for himself, ALJ Juge again relied on the written comments of Mr. King and Ms. Lincoln. ALJ Juge first noted Mr. King's statements that R.P. "used to comment when he didn't take his meds but lately he hasn't mentioned it and his behavior is more consistent," and that R.P.'s coping skills have improved. The ALJ then concluded with Ms. Lincoln's claim that medication helps R.P. with his frustration and anger.

Again, ALJ Juge failed to consider R.P.'s Behavior Intervention Plan and Behavior Assessment [Doc. No. 15-16, pp. 2-24], or the records from R.P.'s individual therapy sessions with Mr. Wilcken, LPCC, which include references to "self-mutilation," "suicidal ideation," [Doc. No. 15-28, p. 14], and the need to "reduce risk of harm to self or others." [Doc. No. 15-28, pp. 2, 4, 6, 8, 10, 19, 21]. Further, ALJ Juge never made an impairment finding as to R.P.'s schizoaffective disorder and thus the Court is unable to determine whether an assessment of the instant domain may be completed without regard to R.P.'s auditory hallucinations.

*Opinion and Order Granting in Part*
*Motion to Reverse and Remand*
Page **12** of **13**

As ALJ Juge's conclusions are based on a disproportionately finite and narrow selection of the evidence, unaccompanied by weighing or explanation, the substantiality test has not been met and the matter should be remanded for further proceedings. *See, e.g.*, *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); *Grogan*, 399 F.3d 1257, 1262 (10th Cir. 2005); *Clifton*, 79 F.3d 1007, 1009 (10th Cir. 1996).

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that the Commissioner's decision should be remanded for additional consideration. Consequently, these circumstances do not lend themselves to a court ordered award of benefits. *See, e.g.*, *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (awarding benefits to a disabled individual after determining that further proceedings on remand would not serve any useful purpose).

Accordingly, the Court hereby **ORDERS** that Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing is **GRANTED** as to Plaintiff's request for remand and reevaluation, and **DENIED** in regard to the request for reversal and payment of benefits. The Court further **ORDERS** that this matter is **REMANDED** for additional proceedings consistent with this opinion.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**

*Opinion and Order Granting in Part*
*Motion to Reverse and Remand*
Page **13** of **13**